WATSON, Justice.*
Defendant, Sandra Celestine, was convicted by a jury of two counts of forgery in violation of LSA-R.S. 14:72[1] and sentenced to one year at hard labor on each count. The concurrent sentences were suspended with three conditions: supervised probation for eighteen months; restitution during the eighteen months; court costs and twenty days in the parish jail.[2] Defendant has appealed her convictions and sentences.
FACTS
In February of 1981, Lawrence Reed, Jr., and Sandra Celestine were living together. Reed had been laid off from his job and was receiving unemployment checks of one hundred and sixty-four dollars a week. Since Reed is illiterate, he customarily endorsed these checks by making his mark. Sandra Celestine would then cash the checks. Ac *427 cording to Reed, they had followed this procedure for a “long time”. (Tr. 16)
Two checks were cashed at Hebert’s Supermarket in Breaux Bridge, Louisiana, where Sandra endorsed the checks as Sandra Reed. She was known to the store manager, George Hebert, III, who believed her to be married. Reed himself had never been seen in the store. Mr. Hebert subsequently had his mother endorse one of the checks as a second witness to the mark.[3]
Approximately six months after the two checks were negotiated, Reed told Hebert that two unemployment checks had been stolen from his mail box and cashed by Hebert.[4] At trial, Reed testified that the marks on these checks were not his and that he and Celestine were no longer living together.
ISSUE
The question is whether the state’s circumstantial evidence excluded every reasonable hypothesis of innocence[5] and, alternatively, whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt.[6]
CONCLUSION
The bill of information charged “false making” of payee Reed’s signature, a violation of paragraph one of R.S. 14:72, not issuing or transferring a forged instrument under paragraph two. (Tr. 1) The state was required to prove that Sandra Celestine falsely affixed Reed’s mark to the checks with the intent to defraud. There was no direct evidence that she made Reed’s mark on the two checks. See State v. Perkins, 384 So.2d 782 (La., 1980).
Although Sandra Celestine endorsed the check as Sandra Reed, she apparently held herself out in the community as Reed’s wife. Use of an alias does not constitute forgery, unless one claims to be “another person”. State v. Melson, 161 La. 423, 108 So. 794 at 795 (1926). See People v. Kollmann, 342 N.E.2d 240, 33 Ill.App.3d 629 (1975). By signing the name she was accustomed to using in the presence of Hebert, Sandra Celestine did not commit forgery. See State v. Lebo, 166 La. 784, 117 So. 829 (1928).
The only evidence that Sandra Celestine altered the checks by adding Reed’s mark is his statement that the mark was not his. This testimony is suspect. Reed was not examined about the basis of his identification. How could he distinguish his mark? Being illiterate, it is doubtful that Reed could identify these checks as differing from other identical checks.
The parties’ customary course of conduct weighs strongly against the state’s case. For a long time, Reed had been making his mark and giving the checks to Sandra to sign and negotiate. The time element also casts doubt on the state’s case. It was not until six months after the checks were negotiated that Reed reported to Hebert that they were missing.
While it is certainly possible that Sandra Celestine appropriated the proceeds of these two checks, the proof falls short of that required for a forgery. It is also possible that Sandra Celestine used the funds for the parties’ living expenses and it was only after their separation that Reed complained. This reasonable hypothesis of innocence was not excluded. It is also possi *428 ble that Sandra Celestine cashed the checks in her customary fashion and decided afterward to keep the money. Appropriating the money after negotiation of the checks would not constitute forgery, absent proof that she forged the marks.
No rational trier of fact could have concluded beyond a reasonable doubt that Sandra Celestine forged Reed’s mark on these two checks.
Since the state failed to exclude every reasonable hypothesis of innocence, and any rational trier of fact should have had a reasonable doubt about defendant’s guilt, the sentence and conviction must be reversed.
For the foregoing reasons, it is ordered that the conviction of defendant, Sandra Celestine, be reversed, the sentence vacated, and the defendant discharged.
REVERSED; DEFENDANT DISCHARGED.
LEMMON, J., concurs, believing that the evidence did not establish beyond a reasonable doubt defendant’s specific intent to defraud.
DENNIS, J., dissents with reasons.

 Bailes, J., sitting for Justice Marcus.

. LSA-R.S. 14:72 provides:
“Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
“Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
“Whoever commits the crime of forgery shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both.”

. Celestine was tried for forgery of two checks but, according to the bill of information, there was a third check. Restitution of the total amount of the three checks was ordered.

. Hebert testified that he eventually paid the checks “twice” (Tr. 25), apparently meaning that he cashed the checks for defendant and later paid the same amounts to Reed.

. A third check had been cashed without Celes-tine’s endorsement (Tr. 24). She was charged but not prosecuted in connection with this check.

. LSA-R.S. 15:438 which reads:
“The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.”

.“[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 at 573 (1979).