505 So.2d 783 (1987)
STATE of Louisiana, Appellee,
v.
J.B. HARRISON and James H. Deal, Appellants.
Nos. 18481-KA, 18482-KA and 18483-KA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Rehearing Denied April 30, 1987.
*785 Joe D. Guerriero, Monroe, for appellant, J.B. Harrison.
Gravel & Brady by Helen Ginger Roberts, New Orleans, Davenport, Files & Kelly by Thomas W. Davenport, Jr., Monroe, for appellant, James H. Deal.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James A. Norris, Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
The defendants, J.B. Harrison and James H. Deal, were convicted of numerous counts of forgery, receiving stolen things and illegal possession of stolen things in *786 violation of LSA-R.S. 14:69 and 72. The defendants appeal their convictions and sentences. For the following reasons, we affirm the convictions and sentences of the defendants, J.B. Harrison and James H. Deal.

FACTS
The defendant, J.B. Harrison, was a professional bookmaker in Ouachita Parish. Harrison was registered as such with federal authorities and possessed a federal wagering stamp.
The defendant, James H. Deal, was employed by Harrison in his bookmaking business and was registered as a clerk on Harrison's federal wagering stamp. Prior to being employed by Harrison, Deal retired from the Monroe Police Department after 22 years of service. While on the force, Deal was assigned to the check and forgery division.
Charles Bentley was an officer and the secretary of the Bastrop Federal Savings and Loan Association. Bentley was one of Harrison's customers and was involved in wagering on sporting events, as well as dice and card games. Originally, Bentley paid his gambling debts to Harrison in cash, but in the early 1980's, Bentley began issuing checks for large sums of money on the operating accounts of the Bastrop Federal Savings and Loan Association. These checks contained the fraudulent and unauthorized facsimile signature of Bastrop Federal's president, Max Dollar, and the initials of Charles Bentley.
Charles Bentley was in charge of reconciling the association's bank statement and in this way concealed the embezzlement of funds from the association which he used to pay his gambling debts. The checks executed by Bentley were given to Harrison in payment of Bentley's gambling debts, but were made payable to fictitious payees. Harrison endorsed some of the checks and Deal endorsed others. Harrison and Deal endorsed the checks with the names of the fictitious payees and negotiated, issued, and transferred the checks at either Central Bank or Ouachita National Bank. Harrison and Deal were both known at the banks where the instruments were negotiated and tellers from the banks testified at trial that Harrison and Deal negotiated and transferred the various checks. Harrison and Deal, who were known to the tellers, never represented themselves to be the fictitious payees, although they endorsed the checks in the names of the fictitious payees.
In April of 1983, the embezzlement was discovered during an audit of the Bastrop Federal Savings and Loan Association by federal bank examiners. Bentley pled guilty in federal court to embezzlement and was given a prison sentence. Testimony at trial indicated that Bentley's embezzled over 4.8 million dollars from Bastrop Federal Savings and Loan Association. During the investigation of the matter, Harrison and Deal denied any knowledge that Bentley was embezzling funds. They claimed that Bentley told them he was representing a group of wealthy people from Arkansas in making wagers and that the people wanted to conceal their identities. For that reason, they would give money to Bentley to place wagers with Harrison, then Bentley would issue one check, drawn on Bastrop Federal, to a fictitious payee, to cover the debt. Any winnings were conveyed to Bentley in cash. Harrison and Deal also alleged that fictitious payees were used on the checks in order to reduce Harrison's tax liability to the IRS.
On August 1, 1985, Harrison was charged by grand jury indictment with 10 counts of theft, or in the alternative, with 5 counts of receiving stolen things and 5 counts of illegal possession of stolen things. On October 11, 1985, Harrison was charged by grand jury indictment with 34 counts of forgery. On that same date, Deal was charged by grand jury indictment with 11 counts of forgery.
The three cases were consolidated and the defendants waived the right to a jury trial, choosing instead to be tried before a judge alone.
The State sought to prove that Harrison and Deal knew or should have known about Bentley's embezzlement and that they *787 knew or should have known they were receiving stolen funds.
The State also alleged that Harrison and Deal were principals to the forgery committed by Bentley in the unauthorized use of the facsimile signature to issue the checks, as well as in the issuing and transferring of those forged checks with the intent to defraud, knowing that the checks were forged; the State also alleged that Harrison and Deal committed forgery by signing the endorsement on the checks in the names of fictitious payees in order to defraud either Bastrop Federal or the Internal Revenue Service.
At trial, the State presented testimony from bank tellers indicating that either Harrison or Deal negotiated each of the forty-eight instruments mentioned in the indictments against them. There was also testimony concerning the manner in which checks made out for more than $10,000 were negotiated. When those checks were presented at the bank, the teller, rather than cashing the checks, prepared and issued several smaller cashiers checks, also made payable to fictitious payees. These cashiers checks were then given by the bank teller to J.B. Harrison. This process of negotiating checks in excess of $10,000 was utilized to circumvent a requirement that all checks for more than $10,000 cashed by a bank had to be reported to the Internal Revenue Service by means of a currency transaction report (CTR).
The State presented the testimony of a handwriting expert who positively identified the endorsements on many of the checks as being those of Harrison and Deal. On other checks, the expert indicated there was strong reason to believe that either Harrison or Deal wrote the fictitious endorsements.
The State presented the testimony of Max Dollar, former president of Bastrop Federal Savings and Loan Association, who stated that Bentley alone was responsible for reconciling the association's bank statements and that these were reviewed on an annual basis by the accounting firm hired by the association.
At the close of the State's case, attorneys for both Harrison and Deal moved for judgments of acquittal on the ground that the State had failed to prove the charges against them.
As to Deal, the court granted that motion on count two, contained in the indictment against him, because the State failed to introduce into evidence the check forming the basis of the charge.
As to Harrison, the court found that many of the counts in the indictment charging him with theft were based upon the same checks for which he was charged with forgery in the second indictment against him. In order to avoid a claim of double jeopardy, the court granted Harrison's motion for acquittal as to counts four, five, seven, eight, nine and ten in the indictment charging him with theft. The defendants' motions for judgments of acquittal were denied as to all other counts against them.
The defense then presented the testimony of several of Bentley's co-workers who indicated that Bentley seemed to have money and lived well but that they were unaware at the time that Bentley was embezzling funds from Bastrop Federal.
The defense also presented the testimony of Charles Bentley, who confirmed the story he told Harrison that he was placing bets for a group of people from Arkansas and in order to protect their identities, checks were issued to fictitious payees on the account of Bastrop Federal. He retracted his statements first made to investigators, in which he stated that Harrison told him to make the checks payable to fictitious payees.
Deal testified in his own behalf and claimed he had no suspicion that Bentley was paying his gambling debts with embezzled funds. Deal also claimed that there was nothing wrong with endorsing and cashing checks issued to fictitious payees as long as they were not trying to falsely obtain funds actually meant for another person.

*788 TRIAL COURT JUDGMENT
As to the indictment charging Harrison with 10 counts of theft, he was found guilty of three counts of the alternative charges of receiving stolen things and one count of illegal possession of stolen things. The other counts contained in the indictment were dismissed pursuant to a motion for a judgment of acquittal. As to counts one and two of the indictment, Harrison was sentenced to serve four years at hard labor on each count and pay a fine of $3,000 on each count or in default of payment of the fine, to serve an additional six months in jail. The terms of imprisonment on counts one and two were to run concurrently to each other, but consecutively to any other sentence.
As to count three, Harrison was ordered to serve six years at hard labor and pay a fine of $3,000 or in default thereof, to serve an additional six months in jail.
As to count six, Harrison was ordered to serve two years at hard labor and pay a fine of $2,000, or in default thereof, to serve an additional four months imprisonment.
The terms of imprisonment of counts three and six were to run concurrently to each other but consecutively to any other sentence imposed.
As to the indictment charging Harrison with thirty-four counts of forgery, the trial court found him not guilty of two counts and guilty of thirty-two counts of forgery. On counts one, three through eight, ten, eleven, thirteen through twenty-eight, and thirty-one through thirty-four, the trial court sentenced Harrison to serve three years at hard labor on each count and pay a fine of $3,000 on each count or in default thereof, to serve an additional six months in jail. The terms of imprisonment on these counts were made to run concurrent to each other but consecutive to any other sentence given.
On count two of the indictment, Harrison was sentenced to serve seven years at hard labor and pay a fine of $5,000 or in default thereof to serve an additional ten months in jail.
As to count nine and twelve of the indictment, Harrison was ordered to serve six years at hard labor on each count and pay a fine of $5,000 on each count, or in default thereof, to serve an additional ten months.
The terms of imprisonment on counts two, nine and twelve were made to run concurrently to each other but consecutive to any other sentence imposed.
Said another way, on the indictments under which Harrison was found guilty of thirty-two counts of forgery, three counts of receiving stolen things and one count of illegal possession of stolen things, he was ordered to serve a total of twenty years at hard labor and pay fines totalling $113,000.
As to the indictment charging Deal with eleven counts of forgery, he was found guilty of ten counts of forgery. He was sentenced to serve five years at hard labor on each count and to pay a fine of $1,000 on each count or in default of payment thereof to serve an additional six months in jail. These terms of imprisonment were made to run concurrently to each other. The terms of imprisonment were suspended and Deal was placed on supervised probation for a period of five years.
The trial court stated that Harrison was guilty of receiving or illegally possessing stolen things in the amount of $142,815.00 and committed forgeries of checks which totalled $394,500.00. Mr. Deal was found guilty of forging checks in the amount of $87,500.00.
Both defendants have appealed their convictions and sentences, urging numerous assignments of error. Harrison's assignments of error five, twelve and thirteen and Deal's assignment of error number three were neither briefed nor argued in brief and are therefore considered abandoned. URCA 2-12.4.

BUSINESS RECORDS EXCEPTION
In Harrison's assignment of error one and Deal's assignment one, the defendants object to the introduction into evidence of the checks made out by Bentley, given to Harrison, and negotiated by either Harrison or Deal. The defendants argue that *789 the checks constituted hearsay evidence and were not properly admissible unless the State laid the proper foundation under the business records exception to the hearsay rule. The defendants contend that the State was required either to call Bentley to the stand to testify regarding how the checks were issued or was required to show that the person who issued the checks was either unknown or unavailable. We find the defendants' arguments to be meritless.
Hearsay is evidence of an unsworn out-of-court assertion, whether oral or written, made by a person other than the testifying witness and offered to prove the truth of the matter asserted. State v. Launey, 335 So.2d 435 (La.1976); State v. Junegain, 324 So.2d 438 (La.1975); State v. Hayes, 306 So.2d 705 (La.1975). The business record exception to the hearsay rule allows for the admissibility of a permanent record made in the ordinary course of business, by a person unavailable for testimony, from personal knowledge of the facts recorded or from information furnished by one having a business duty to observe and report the facts as proof of the facts recorded, in the absence of a strong motive to misrepresent, if the record is the first collected and recorded memorial. State v. Monroe, 345 So.2d 1185 (La.1977).
In the present case, the defendants argue the checks were offered to prove that they were issued on the account of Bastrop Federal and were issued by authority of Bentley's initials. However, we find that the checks were not presented as business records of Bastrop Federal simply to show that they were issued, but were introduced in connection with testimony that showed they were fraudulently issued, and to show that they were in the possession of either Harrison or Deal, they were negotiated by the defendants, and that when these defendants presented the checks for payment, they received the proceeds. As such, the checks formed a part of the res gestae of the crime.
The State presented the testimony of Max Dollar, president of Bastrop Federal, who testified that the use of his facsimile signature on these checks was not authorized. The State also presented the testimony of the bank tellers who cashed the checks who indicated that funds were dispersed to Harrison or Deal in exchange for the unauthorized checks. Under the facts of this case, the foundation actually laid by the State was sufficient and the trial court was correct in admitting the checks into evidence.

TELLER TESTIMONY
The defendant, Harrison, in his assignment of error four, argues the trial court committed reversible error in failing to allow one of the bank's tellers, Beverly Armstrong, to testify as to Harrison's comments to her following Bentley's arrest for embezzlement. The State objected when the defense attempted to elicit this information from the witness. The trial court sustained the objection on the ground that the comment was inadmissible hearsay.
The defendant claims that the witness would have testified that Harrison told her to be entirely truthful and open with any investigation that might result from Bentley's arrest. The defendant argues that this statement was not hearsay, as it was not offered for the truth of the matter asserted and that even if it was hearsay, it was admissible to establish the defendant's state of mind.
Harrison argues that this testimony was relevant because the crimes of forgery and illegal possession of stolen things includes state of mind as an essential element.
The record shows the statement was a self-serving exculpatory statement offered for the truth of the matter asserted and therefore was hearsay. The statement was made at a time removed from the actual commission of the crimes charged and therefore does not show the state of mind of the defendant at the time the offenses were committed. The trial court did not err in sustaining the State's objection to the admissibility of this testimony.

CASHING OF CHECKS AND CTR REQUIREMENTS
Harrison, in assignment two, argues that the trial court erred in admitting into evidence *790 testimony regarding the manner in which the defendant received the funds after one of the checks for a large amount was negotiated. Harrison, in assignment three, and Deal, in assignment two, argue the trial court erred in admitting testimony regarding currency transaction reporting requirements.
The State's witness, Marcille Hester, identified one of the checks drawn on Bastrop Federal for $30,000 as an instrument she cashed for Harrison. The witness testified that because the check was over $10,000, the Internal Revenue Service required the filing of a currency transaction report (CTR). The witness testified that in order to avoid this requirement, instead of simply cashing the check for the full amount, she issued to Harrison three smaller cashier's checks made payable to persons other than Harrison. She then gave Harrison the remainder of the money in cash. The defendants objected to this testimony on the grounds that it was irrelevant and that it represented an attempt by the State to introduce evidence of other crimes without first providing to the defense the notice required by State v. Prieur, 377 So.2d 126 (La.1973).
The testimony was marginally relevant to show that Harrison in fact negotiated the check and received the funds from it. Establishing that the check was cashed in such a way as to avoid detection by the Internal Revenue Service was relevant to the State's showing of an intent to conceal the transaction from official scrutiny. Such a showing has a bearing on the defendant's intent to defraud. Therefore, admission of this testimony was relevant as to Harrison. This transaction was part of the res gestae of the commission of the crimes with which the defendant was charged and was not the sort of "other crimes" evidence requiring a Prieur notice.
As to the defendant, Deal, who was not involved in this particular transaction, the evidence does not appear to be relevant. However, he has failed to demonstrate any prejudice in the admission of the evidence. These assignments of error have no merit.

SUFFICIENCY OF EVIDENCE
The defendant, Harrison, claims there was insufficient evidence to support a finding of guilt of receiving stolen things, illegal possession of stolen things, or forgery. The defendant, Deal, claims there was insufficient evidence to support a conviction for forgery. Both defendants basically argue that the State failed to prove the guilty knowledge or intent to defraud necessary to support convictions for the crimes charged. Also, based upon this argument, Harrison, in assignment six, contends the trial court erred in failing to grant his motion for acquittal on all counts at the conclusion of the State's case. Deal, in assignments six and seven, argues the trial court erred in failing to grant his post-verdict judgment of acquittal and motion for new trial based on the claim of insufficiency of evidence. For the following reasons, we affirm the rulings of the trial court.
Harrison was found guilty under one indictment with three counts of receiving stolen things and one count of illegal possession of stolen things. The reason for the difference in these crimes charged was that the first three counts contained in the indictment occurred before the effective date of Acts 1982, No. 552, § 1, which amended LSA-R.S. 14:69, changing the definition of the crime of receiving stolen things to illegal possession of stolen things. The last three counts allegedly occurred after the effective date of the amendment.
LSA-R.S. 14:69, before amendment, provided, in pertinent part:
Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
The statute was amended to provide as follows:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, *791 or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Therefore, in order to obtain convictions, the State was required to prove that Harrison procured, received, concealed, or possessed something of value which had been the subject of a robbery or theft under conditions which indicate he knew or should have known the thing was the subject of one of those offenses. Under the facts of this case, there is no dispute that Harrison received from Bentley a large amount of money which Bentley embezzled from Bastrop Federal. However, Harrison contends that the State failed to prove that he knew or should have known that the funds were the subject of the theft and embezzlement.
In considering the standard of review for sufficiency of evidence, the reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984).
The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438.
When circumstantial evidence is relied upon to obtain a conviction the court has explained, in State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985), the interaction of the Jackson standard with this state's statutory rule concerning circumstantial evidence as follows:
The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule, however, provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is, therefore, a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it does emphasize the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of the circumstantial evidence. State v. Wright, supra; State v. Chism, 436 So.2d 464 (La.1983)."
Harrison contends that he never knew that Bentley was paying him with embezzled funds. Harrison claims Bentley was placing bets for a group of individuals who wished to remain anonymous and, for that reason, they would give money to Bentley for the placing of bets. Bentley would then deposit these funds in the account of Bastrop Federal and would issue checks from that account made payable to fictitious payees in order to cover the gambling debts. Bentley corroborated this story at trial.
However, other facts indicate, and the trial court must have found, that Harrison knew, that Bentley was paying the debts with embezzled funds. First, Harrison had a long history of operating as a bookmaker *792 and he cannot be said to possess the degree of naivety necessary in order to find credible his lack of knowledge. Second, it had been Bentley's long-standing and customary practice to pay his gambling debts to Harrison in cash, but, in the early 1980's, the payment scheme switched to checks for large amounts. Third, Bentley issued checks clearly drawn on the account of Bastrop Federal, rather than using his own personal bank account. The fact that the checks were drawn on Bastrop Federal to pay Bentley's personal gambling debts is perhaps the most telling piece of circumstantial evidence and would have alerted Harrison to the fact that the funds used were the subject of theft by Bentley, even in the face of Bentley's alleged "explanation" that he was covering for a group of wealthy farmers. Fourth, the large number of checks and the large dollar amounts of the checks would have alerted Harrison to the fact that the funds were stolen. Finally, the use of fictitious payees in an attempt to avoid detection of the true payee would also have alerted Harrison to the fact that the funds were stolen.
Viewing all these factors and the circumstances of this case in the light most favorable to the prosecution, which we are required to do upon appellate review, we conclude that every reasonable hypothesis of innocence was excluded and there was sufficient evidence to find Harrison guilty of one count of illegal possession of stolen things and three counts of receiving stolen things.
Both Harrison and Deal also argue there was insufficient evidence upon which to find them guilty of the crime of forgery.
LSA-R.S. 14:72 provides in pertinent part:
Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.
The State bears the burden of showing that the defendant possessed the requisite intent to defraud. State v. Tomlinson, 457 So.2d 651 (La.1984); State v. Raymo, 419 So.2d 858 (La.1982); State v. Marler, 428 So.2d 954 (La.App. 1st Cir. 1983) writ denied 433 So.2d 151 (La.1983); State v. Nicholas, 491 So.2d 711 (La.App. 4th Cir.1986); State v. Thomas, 454 So.2d 833 (La.App. 4th Cir.1984).
The evidence is undisputed that Bentley issued forged checks made out to fictitious payees and gave those checks to Harrison. There is no doubt that the checks issued by Bentley over the facsimile signature of Max Dollar were unauthorized and therefore, the use of the facsimile signature constituted a forgery. It is also undisputed that Harrison and Deal endorsed the various checks with the names of the fictitious payees and negotiated the checks, receiving the proceeds.
The defendants contend that the act of endorsing the checks with the name of the fictitious payees constituted the use of an alias and, as such, did not constitute a false making within the meaning of the forgery statute.
The simple use of a fictitious payee or an alias alone did not constitute the crime of forgery. The mere use of a false or fictitious name may constitute false pretenses, but so long as the writing purports to be the act of the person issuing it and of no other, there is no forgery. State v. Celestine, 439 So.2d 426 (La.1983); State v. Devenow, 220 So.2d 78 (La.1969); State v. Mann, 202 So.2d 259 (La.1969); State v. Wilson, 123 So. 624 (La.1929).
The forgeries committed by Harrison and Deal were not accomplished by the mere act of endorsing the checks with the names of the fictitious payees. In signing the fictitious endorsements, the defendants never represented those endorsements to be the act of any person other than themselves. However, the defendants did commit the crime of forgery by transferring, with intent to defraud, the checks forged by Bentley with the knowledge that the checks were forged. Under the statutory definition LSA-R.S. 14:72, these actions constituted forgery. The writing of endorsements *793 of the fictitious payees was merely one step in accomplishing the transfer of the forged instruments bearing the unauthorized and fraudulent facsimile signature of Max Dollar. As we have previously said, Harrison knew that these checks, issued by Bentley for payment of personal gambling debts, were forged. Harrison's action in negotiating the checks, knowing that they were forged, also constituted the crime of forgery. The State carried its burden of proving the crime of forgery as to Harrison.
The circumstantial evidence also establishes that Deal was aware that the checks were forged. Deal had been a law enforcement officer for 22 years and served a large part of that time in the investigation of forged checks. Like Harrison, Deal was not naive regarding such transactions. The circumstantial evidence previously outlined above as to Harrison is equally applicable to Harrison's associate, Deal, and shows that Deal, like Harrison, knew that the funds represented by the checks were the subject of Bentley's forgery. Deal's actions in endorsing and negotiating those checks in the names of fictitious payees were steps in completing the crime of forgery. For these reasons, we conclude that there was sufficient evidence upon which to base the convictions of both Harrison and Deal for the crimes of forgery.

JURY INSTRUCTIONS
This case was tried before a judge alone. The court filed into the record a copy of written instructions of law with which the court charged itself. Harrison, in assignment seven, and Deal, in assignment four, object to the special instructions followed by the trial court; they also object to the court's denial of their special instructions regarding the offense of forgery. We find defendants' arguments to be meritless.
LSA-C.Cr.P. Art. 807 provides that a special jury instruction submitted by the State or the defendant shall be given by the court if it does not require qualification, limitation, or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The court charged itself with the general law regarding burden of proof, reasonable doubt, direct and circumstantial evidence, and the statutory definitions of the offenses charged.
The court also instructed itself that the unauthorized use of a stamp or machine used to complete legal documents satisfies the requirement of the forgery statute requiring a false making or altering. The court's special instruction on this point which relates to the facsimile signatures and other portions of the forged checks, provides:
The "false making or altering" portion of the definition of forgery in R.S. 14:72 can include the unauthorized affixing of the markings of a stamp or machine regularly employed to make or complete legal instruments.
The defendants object that this forgery relates to the forgery committed by Bentley and is therefore not pertinent to the defendants. We disagree. Knowledge by Harrison and Deal that Bentley was not authorized to use the signature machine to issue the checks would make the defendants principals to the forgery committed by Bentley. LSA-R.S. 14:24. Further, their transferring of the forged checks prepared by Bentley with knowledge of their falsity constituted the crime of forgery.
The defendants also object to the remainder of the instructions followed by the trial court, arguing that the instructions they requested were a correct statement of the law.
Counsel for both Harrison and Deal filed into the record identical requested special instructions concerning the offense of forgery. Those instructions were as follows:
The essence of the offense of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party signing it. State v. Mann, 202 So.2d 259 (La.1967); *794 State v. Wilson, 168 La. 932, 123 So. 624 (1929); 28 Corpus Juris 896.
Forgery is defined as the making or altering of a writing so as to make the writing or alteration purport to be the act of another person. State v. Taylor, 46 La.Ann. 1332, 16 So. 190 (La.1894). The mere use of a fictitious or false name may constitute false pretenses, but so long as the writing purports to be the act of the very person making it, and of no other, it is not forgery. State v. Celestine, 439 So.2d 426 (La.1983); State v. Devenow, 253 La. 796, 220 So.2d 78 (1969); State v. Mann, supra; State v. Ramsey, 242 La. 1089, 141 So.2d 375 (1962); State v. Melson, 161 La. 423, 108 So. 794 (1926).
The trial court filed and relied upon the following special instruction:
The essence of the crime of forgery is the misrepresentation of a signature other than that of the offender and the deception of the receiver of a document having legal efficacy by the use of that misrepresentationeither by the false writing of such a signature or the presentation thereof with the knowledge of its misrepresentation and an intent to defraud. With respect to checks, a forger receives goods or money or benefit for a false writing to which that check would not otherwise entitle him. He falsely represents that the writing is the act of one other than himself.
A review of the instructions requested by the defendants reveals that they were essentially included in the instructions actually followed by the court. The defendants' requested instruction that the use of an alias does not constitute a forgery was sufficiently covered by the trial court's instruction that, in order to constitute a forgery, the accused must falsely represent that the writing is the act of one other than himself. We find no error in the trial court actions with respect to these instructions.

EXCESSIVE SENTENCES
Both defendants contend that the sentences imposed by the trial court were unconstitutionally excessive and that the trial court failed to comply with the sentencing provisions of LSA-C.Cr.P. Art. 894.1.
The defendant, Harrison was found guilty under one indictment of three counts of receiving stolen things and one count of illegal possession of stolen things. The checks covered by this indictment totaled $142,815. On these charges, the trial court sentenced Harrison to a total of ten years imprisonment at hard labor and a fine of $11,000. On another indictment, Harrison was found guilty of thirty-two counts of forgery. The forged checks totaled $394,500. Under this indictment, Harrison was sentenced to serve a total of 10 years imprisonment at hard labor and to pay fines totaling $102,000. The sentences imposed on these two indictments were ordered to be served consecutively. Said another way, the total sentence received by Harrison in these consolidated cases was 20 years at hard labor and fines totaling $113,000. Harrison argues that because he was a first felony offender and because his offenses were nonviolent, the sentences imposed by the trial court were excessive. We find Harrison's arguments to be meritless.
It is well settled that a sentencing judge is given wide discretion in imposing a sentence within the statutory limits and that such a sentence should not be set aside as excessive by the appellate court absent a showing of abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C. Cr.P. Art. 894.1 enumerate criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied 435 So.2d 438 (La.1983); State v. Sepulvado, 367 So.2d 762 (La.1979).
The record shows that the trial court adequately complied with the sentencing provisions of LSA-C.Cr.P. Art. 894.1. Prior to sentencing, as required by LSA-C. Cr.P. Art. 894.1, the trial court adequately outlined the aggravating and mitigating *795 circumstances considered in imposing the sentences. As mitigating circumstances, the court considered that Harrison was 52 years old and suffered from numerous serious ailments including lymphocytic leukemia, angina, diabetes, hyperlipoidemia, had undergone surgery for ulcers and had surgery for repair of an artery in his leg which resulted in permanent nerve damage. Harrison had also required a balloon angioplasty to relieve heart blockage. In addition, the court considered that Harrison's 14 year old daughter had been diagnosed to have a serious medical disorder.
The court also considered that Harrison was a first felony offender, that the court received a large number of letters from the public urging leniency, that recreational gambling was becoming socially acceptable, and that Bastrop Federal was lax in failing to discover Bentley's embezzlement.
As aggravating factors, the court noted that the defendant had a continuous deliberate career of illegal activity over a long period of time, that the defendant must have known his conduct would result in loss or serious harm to others and that the defendant had not offered to repay the funds embezzled. The court also considered the magnitude of the events perpetrated intentionally and regularly over a period of months.
The court found that Harrison was not a good risk for probation and found that the offense was likely to recur. The court found that Harrison required custodial confinement for an extended period of time.
The statutory maximum term of imprisonment that may be imposed upon a person found guilty of either receiving stolen things or illegal possession of stolen things in the amounts involved in this case, is 10 years. Harrison was found guilty of three counts of receiving stolen things and one count of illegal possession of stolen things. Harrison could have been ordered to serve 10 years on each count consecutively. The statutory maximum term of imprisonment that may be imposed for forgery is 10 years. Harrison was found guilty of thirty-two counts of forgery. His cumulative term of imprisonment for the offenses was far below the statutory maximum that could have been imposed.
Considering the magnitude of the offenses, the length of time over which they occurred and the defendant's background, we do not believe the trial court abused its much discretion in the imposition of these sentences. Therefore, we affirm the terms of imprisonment at hard labor imposed by the trial court upon Harrison. We also affirm the fines imposed upon Harrison for each count of forgery for which he was convicted and for one count of illegal possession of stolen things of which he was convicted.
The defendant, Deal, was found guilty of ten counts of forgery and ordered to serve 5 years at hard labor on each count and pay a fine of $1,000 on each count, or in default of payment thereof, to serve an additional 6 months in prison. The terms of imprisonment were made to run concurrently and were suspended. Deal was placed on supervised probation for a term of 5 years. As mitigating circumstances, the court considered letters from the public on his behalf, many from former police officers, the fact that Deal served on the police force for 22 years and that he occupied an inferior role to that of Harrison in the commission of these offenses.
As aggravating circumstances, the court found that, after many years of work as a police officer, Deal chose, for the purposes of monetary gain, to intentionally violate the state's gambling laws when he became associated with Harrison. The court also noted that the checks Deal was convicted of having forged totaled $87,500.
The maximum penalty to be imposed under the forgery statute is a fine of not more than $5,000 or imprisonment with or without hard labor for not more than 10 years or both. On each count of forgery for which he was convicted, Deal received well below the maximum sentence possible. In addition, Deal received the benefit of having the terms of imprisonment suspended. Therefore, the sentence imposed upon Deal was not excessive.

*796 CONCLUSION
For the above stated reasons, we affirm the convictions and sentences of the defendant, J.B. Harrison, for three counts of receiving stolen things, one count of illegal possession of stolen things and thirty-two counts of forgery.
The convictions and sentences of the defendant, James H. Deal, on ten counts of forgery are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.