569 So.2d 585 (1990)
J.B. HARRISON, Jr., Plaintiff-Appellant,
v.
James A. NORRIS, Jr., District Attorney, Defendant-Appellee.
No. 21677-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1990.
Writ Denied December 14, 1990.
*586 Jones & Johnson by Neal G. Johnson, Monroe, for plaintiff-appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Lee E. Ineichen, Asst. Dist. Atty., Monroe, for defendant-appellee.
Before MARVIN, C.J., FRED W. JONES, Jr., SEXTON and HIGHTOWER, JJ., and LOWE, J. Pro Tem.
MARVIN, Chief Judge.
After a reargument, as mandated by LSA-Const. Art. 5, § 8(B), in this appeal arising out of a mandamus action under the Public Records Act to compel the district attorney to permit Harrison, a convicted felon, to inspect and obtain a copy of the prosecution records upon which the State relied for conviction, we reverse the trial court's judgment and render a judgment in favor of Harrison enforcing the Public Records law. LRS 44:1 et seq.; LSA-Const. Art. 12, § 3.
Relying on Bizal v. Connick, 489 So.2d 343 (La.App. 4th Cir.1986), writ denied, and because Harrison stated his intent to seek post-conviction relief, the DA contends his records are not public records subject to disclosure under the express provisions of LRS 44:3 A(1) because his records pertain to "criminal litigation" that is either "pending" or "reasonably anticipated."
The DA relies solely on § 3 A(1) and does not assert that his records are otherwise privileged or protected against public access because they contain "confidential" or "internal security" materials contemplated by § 3 A(2) and (3). We emphasize and here edit and reproduce § 3 A:
A. Nothing in this Chapter shall be construed to require disclosure of records, or the information contained therein, held by the offices of ... district attorneys,... which records are:
(1) Records pertaining to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; or
(2) Records containing the identity of a confidential source of information ... or

*587 (3) Records containing security procedures,... or internal security information; or
(4) The records of the arrest of a person until a final judgment of conviction or the acceptance of a plea of guilty by a court of competent jurisdiction....
(5) Records containing the identity of an undercover police officer ... or
(6) Records concerning status offenders as defined in the Code of Juvenile Procedure.
In accord with the standards of LRS 1:1 et seq., we interpret the PR Act to determine the meaning of the terms "criminal litigation" [that is] "finally adjudicated or otherwise settled," and to determine whether a threatened or instituted PCR action constitutes criminal litigation that is "pending" or "reasonably anticipated" so as to make the DA's prosecution record "privileged" against or not subject to public access.
We distinguish Bizal, supra. Rendering judgment for Harrison, we hold that a PCR action under CCrP Arts. 924 et seq., whether threatened or instituted, is not "criminal litigation" contemplated by LRS 44:3 A(1) so as to render the records upon which the DA relied for a conviction inaccessible or "privileged" against inspection by the PR Act. We do not decide what DA records pertaining to criminal litigation may be otherwise privileged from disclosure under LRS 44:3 A(2), as "confidential," or A(3) as "internal security" records.

FACTS
Harrison was convicted of several crimes, including forgery, and was sentenced to 20 years at hard labor and fined a total of $113,000. His convictions and sentences, which were appealed, became final and he began serving his sentence. State v. Harrison, 505 So.2d 783 (La.App. 2d Cir.1987), writ denied. CCrP Art. 922.
Harrison was thereafter convicted of related crimes in federal court and was given sentences to run concurrently with the state sentences. His habeas corpus action filed in federal court in 1988 was dismissed in February 1989 without prejudice because he had not pursued or exhausted PCR remedies in the state court. See 28 U.S.C. § 2254.
Harrison hired new counsel, Johnson, who obtained permission on August 11, 1989, as directed by the PR Act, to inspect materials in the DA files upon which Harrison was convicted. During the course of his inspection, Johnson stated Harrison's intent to institute a PCR proceeding, whereupon the DA terminated the inspection, announcing that the files were considered "open and pending" in anticipation of Harrison seeking PCR.
Harrison instituted his mandamus action to enforce the PR Act on August 25. On September 1, 1989, he instituted his PCR action in the same court. The facts summarized above were stipulated to the trial court which rejected Harrison's demands, citing Bizal, supra, and § 3 A(1).

LAW
The PR Act must be liberally construed in favor of public access which is guaranteed by LSA-Const. Art. 12, § 3, as implemented by the PR Act. See § 31. Access to a public record can be denied only when the law specifically and unequivocally provides against access. See Title Research Corp. v. Rausch, 450 So.2d 933 (La.1984); Cormier v. Di Guilio, 553 So.2d 806 (La.1989); Webb v. City of Shreveport, 371 So.2d 316 (La.App. 2d Cir.1979), writ denied; Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir.1974), writ refused. An action to enforce the PR Act is a civil action.
Nothing in the PR Act requires disclosure of records held by district attorneys that pertain
... to pending criminal litigation or any criminal litigation which can be reasonably anticipated, until such litigation has been finally adjudicated or otherwise settled; * * * See § 3 A quoted supra.
This section clearly contemplates that a person shall have access to DA records pertaining to criminal litigation after the *588 criminal litigation is "finally adjudicated" or "otherwise settled."
From its inception in 1940, the PR Act only temporarily denied access to DA records. Acts 1940, No. 195, § 3 read:
The provisions of this Act shall not apply to public records, ... when the same are held by any ... district attorney ... as evidence in the investigation for or prosecution of a criminal charge, until after such public records have been used in open court or the criminal charge has been finally disposed of; ... See State v. Vallery, 214 La. 495, 38 So.2d 148, 149 (1948). (Emphasis added.)
Former LRS 15:541 provided: "A case is finally disposed of by any judgment ... that ... refuses to grant a new trial, ... to arrest judgment, or that imposes sentence." See now CCrP Art. 922, discussed infra.
The 1972 amendment incorporating the language now in § 3 A(1) defers public access to the records on which the DA relied for successful prosecution until the criminal litigation is "finally adjudicated or otherwise settled." Compare CCrP Art. 922.
In the context of the PR Act and considering that some of the words and phrases in § 3 A(1) are "technical" and have acquired a peculiar and appropriate meaning in the light of other statutes, we trace the thread of LRS 44:3 as it is interwoven with other laws relating to district attorneys, criminal prosecutions, and public records.
The terms "criminal litigation," "criminal proceedings," and "criminal prosecution" are not specifically defined by statute, but their respective meaning may be discerned.
Criminal prosecutions are under the charge and control of the DA. CCrP Art. 61. Criminal prosecution is "instituted" either by indictment by a grand jury or by an information which is a written accusation of crime made by the district attorney. CCrP Arts. 382-384. A "defendant" in a criminal prosecution, as defined in Art. 934(4), is the person who has been charged with (arrested, Arts. 203(4), 218) or accused (by information or indictment, Arts. 382-384) of an offense as defined in Art. 933(1).
The public record of an arrest may be expunged under LRS 44:9, if, among other things, prosecution has been instituted and such proceedings have been finally disposed of by dismissal (§ 9 A(2)) or by a nolle prosse (§ 9 B) or where "[t]he district attorney declines to prosecute." § 9 C(1)(c). As contemplated by § 9, once prosecution has been instituted, the [criminal] proceedings may be "disposed of" and thus "otherwise settled," as contemplated by § 3, or the proceedings, as "criminal litigation," may continue until "finally adjudicated" as § 3 provides.
The law also contemplates that a judgment or adjudication against a defendant in a criminal proceeding (Arts. 859-862) becomes final when the defendant does not appeal or seek appellate rehearing in an appeal within the delays provided or when rehearing is denied by the supreme court or the appellate court. Arts. 911-913, 921-923.
A criminal prosecution is brought only in the name of the state against the criminal defendant. The party injured by the crime is not a party to the criminal prosecution and his rights to civil remedies are not affected by the criminal prosecution. Art. 381.
The term "criminal prosecution" was once said to be more limited than the term "criminal proceedings," which includes other matters before trial such as a grand jury proceeding. See Comment under Art. 381.
A criminal prosecution consists of a series of proceedings which begin when the formal accusation is made by indictment or information and which terminate when the adjudication or judgment against the state or the defendant becomes final. See State v. Shushan, 206 La. 415, 19 So.2d 185 (1944).
The word litigation, in its common and approved usage and dictionary definition, means a legal contest by judicial process. In the light of other statutes and in the context of the PR Act, we construe the term criminal litigation in LRS 44:3 A(1) to mean an adversarial contest begun by formal accusation and waged in judicial *589 proceedings in the name of the State, by the district attorney, on the one hand, and against the defendant on the other. This concept of criminal litigation in § 3 A(1) is the same concept of criminal prosecution in the CCrP.
In the context of § 3 A(1), criminal litigation (prosecution) is pending when the formal accusation is instituted either by the DA (bill of information) or by the grand jury (indictment). Criminal litigation (prosecution) may be reasonably anticipated when the DA, who is in charge of criminal prosecutions, concludes that it is probable that an arrest will be made and formal accusation will be instituted in due course against a potential criminal defendant as the criminal investigation progresses.
In the context of § 3 A(1), instituted criminal litigation is "finally adjudicated" when the conviction becomes final (Art. 922) or is "otherwise settled" either by dismissal or by nolle prosse of the formal accusation by the DA. See § 9 and CCrP Art. 691.
Technically and after being formally accused, Harrison was a defendant in criminal litigation as defined in Art. 934(4), until his judgment of conviction and sentence became final and executory. Arts. 922-924, 926. After his conviction became final, Harrison technically became a prisoner for the purpose of serving his sentence under LRS 15:566.2 and a person in custody, for the purpose of, and in the event he instituted, a post-conviction relief action under Arts. 924-930.7. Compare the pre-conviction relief-from-confinement action (habeas corpus) in Arts. 351-370 and Revision Comments which speak in terms of a criminal proceeding being either instituted or anticipated.
LSA-Const. Art. 12, § 3, states that "no person shall be denied the right to ... examine public [records] ... except in cases established by law." LRS 44:32 states that the "custodian shall present any public record to any person of the age of majority who so requests." Neither the constitution nor the PR Act otherwise defines or restricts the word person. Harrison must be deemed to be a person within the meaning of these provisions.

PCR AND HABEAS CORPUS
Only a "person in custody after sentence following conviction" may apply or petition for PCR. See Art. 924. If the "petitioner" for PCR "may appeal the conviction and sentence which he seeks to challenge," an "application" for PCR shall not be entertained. Art. 924.1.
The PCR petitioner, as defined by Art. 924, may obtain PCR relief only on the six grounds listed in Art. 930.3. Five are constitutional. The other ground is that time "limitations on the institution of prosecution had expired." Art. 930.3(4). The case law additionally has allowed a prisoner or person in custody to apply for an out-of-time or after-time appeal by a pleading that courts have denominated a PCR application. See, e.g., State v. Counterman, 475 So.2d 336 (La.1985).
The trial court may allow the use of some of the civil discovery procedures to summarily dispose of a PCR application. "In such matters, the court shall be guided by the Code of Civil Procedure." See Arts. 929, 930 and Revision Comments. Our emphasis.
As the law limits who can institute the PCR action, when, and on what grounds, the law similarly limits who can institute criminal litigation, when, and on what grounds. No private citizen, whether criminal defendant, victim, or stranger to criminal conduct, may institute criminal litigation. Only the State can institute criminal litigation.
PCR is not designed to take the place of an appeal. The petitioner must first exhaust whatever appellate rights he has. Art. 924.1, Revision Comment.
The writ of habeas corpus "shall not be suspended." See LSA-Const. Art. 1, § 21 and predecessor constitutions. Habeas corpus is a writ of inquiry in aid of an individual's constitutional and fundamental right to freedom and liberty and is the proper remedy to obtain relief from illegal custody or detention. CCrP Arts. 351 and 924.
*590 Historically, administrative, substantive and procedural problems arose from post-conviction habeas corpus practice. See 3 W. LaFave and J. Israel, Criminal Procedure, Ch. 27, §§ 27.1 and 27.2 (1984); C. Joseph, Post Conviction Procedure, 41 La. L.Rev. 625 (1981). Revision of criminal habeas corpus articles became necessary from time to time. See, e.g., Acts 1966, No. 310, § 1; Acts 1968, No. 139, § 1; Acts 1976, No. 382, § 1; Acts 1980, No. 429, § 2.
Apparently prompted by Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965), our supreme court determined that alternative procedures for disposition of habeas corpus post-conviction writ applications were needed. PCR rules modeled after ABA standards and proposed federal rules for state prisoner PCR applications were adopted by our supreme court in 1976. See ABA Standards for Criminal Justice, Vol. IV, Chap. 22 (2d Ed.1982); 28 U.S.C. § 2254; La.Sup.Ct. Rule XXVII, as amended, Comment and Appendix "A"; and URCA, Rule 5 and Appendix "A".
In 1980, the legislature incorporated the supreme court rules in new CCrP Title XXXI-A. Acts 1980, No. 429, §§ 1 and 2. The legislation's purpose was to (1) replace and eliminate the confusion surrounding the variously nominated and often confusing common law forms, purposes and practices of post-conviction habeas corpus writs; (2) provide a unified, post-conviction and sentence remedy after a defendant in custody has exhausted his appellate remedies; (3) allow such a defendant to return to the trial court in which he was convicted and sentenced for the original trial court's own first consideration and possible correction, if appropriate, of constitutional and jurisdictional challenges addressed to their prior action; (4) ensure that such alleged errors are addressed first by state courts and only thereafter by federal courts on only federal issues; (5) limit repetitive petitions; and (6) avoid the necessity of producing a defendant in court on meritless applications. See e.g., State v. Terry, 458 So.2d 97 (La.1984); C. Joseph, supra.
Conflicting post-conviction provisions in the habeas corpus title were then repealed. See and compare CCrP Arts. 351-370 and CCrP Arts. 924-930.7 and Revision Comments.
A PCR proceeding is not a step in the criminal prosecution of a defendant. The former post-conviction habeas corpus was, and the PCR petition is, a collateral action to test the detention of a criminal defendant after his sentence and conviction have become final. Arts. 924-930.7 and Revision Comments.
A PCR proceeding is unique. For uniformity, completeness and convenience, the PCR articles are included in the Code of Criminal Procedure and the petition is generally docketed as part of the criminal prosecution. Louisiana law, however, does not categorize PCR as either criminal or civil. Louisiana cases have not squarely addressed whether the nature of either the former post-conviction habeas corpus or the present PCR is civil or criminal. See, e.g., Bizal, supra; State v. Johnson, 532 So.2d 102 (La.1988); State v. Vallery, supra.
Recognizing that a PCR application directly arises out of a conviction and sentence in a criminal prosecution, we nonetheless conclude that PCR is a hybrid action in the nature of a civil action. Authorities in other jurisdictions support this conclusion.
Federal courts have generally held that a 28 U.S.C. § 2254-2255 post-conviction proceeding is a civil action, independent from the criminal proceeding out of which it arises. See, e.g., Helfin v. U.S., 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); United States v. Hayman, 342 U.S. 205, 209, 72 S.Ct. 263, 267, 96 L.Ed. 232 (1952); Dillard v. Blackburn, 780 F.2d 509 (5th Cir.1986); Rule 11, Rules Governing Section 2254 Cases in the United States District Courts; 28 U.S.C. § 2255 (1976). Compare Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969) and ABA Standards, supra, at § 22-1.2 which suggest that federal habeas corpus proceedings are hybrid in nature.
*591 The ABA-approved Uniform Post Conviction Procedure Act (1980), or UPCPA, incorporating the ABA Standards, supra, has been adopted in several states. The courts of the 12 states that have adopted either the ABA Standards for PCR or the UPCPA, in some form, and that have squarely considered the nature of PCR, are unanimous in holding that PCR is in the nature of a civil action and independent of the criminal action. Florida, for instance, has long held, and now succinctly states, that PCR
like a habeas corpus proceeding ... is considered civil in nature and collateral to the criminal prosecution which resulted in the judgment of conviction, notwithstanding the inclusion of [the PCR] rule ... within the criminal rules. State v. Lasley, 507 So.2d 711 (Fla.App.2d Dist.1987).[1] Citations omitted, emphasis supplied.
While PCR is concerned with civil and criminal law in the broad sense and is unique or hybrid in that respect, we hold that for the purpose of civil enforcement of the PR Act, PCR, whether reasonably anticipated by the DA or instituted by the person in custody after a conviction, does not constitute criminal litigation as that term is used in § 3 A(1) of the PR Act. Indeed, the custodian of a public record, inspection of which is sought under the PR Act, shall not inquire of a "person" for what purpose he or she seeks access to the public record. The only inquiry permitted the custodian is into the age and identification of the person who requests inspection. The PR Act is to be liberally construed in favor of disclosure. See § 32; Title Research and Webb, both supra.

BIZAL v. CONNICK
Bizal, an attorney, sought access under the PR Act to DA records in three criminal cases. The sparse reported facts indicate that the convictions in each case had been affirmed by the supreme court two years before access was requested, but that the appeal of one defendant, or perhaps a co-defendant, Powell, was yet pending when Bizal sought to enforce the PR Act.
Bizal contended the cases in which he sought DA records were "finally adjudicated" under LRS 44:3 A(1) when the delay for appellate rehearing had expired as provided by Art. 922. The DA, Connick, maintained the cases had not been "finally adjudicated" because Powell's "appeal" was still pending, that all defendants had not exhausted "their [post-appellate] state and federal remedies," and that some DA records contained information that was otherwise privileged.
The court reasoned that the DA reasonably anticipated further litigation in each case since defendants had a right to "appeal" [apply?] for PCR, and, therefore, the DA records were "privileged." As we appreciate the law, a person in custody, after his conviction, once affirmed on appeal, is final, has no right to further appeal his conviction but is relegated to apply for PCR. We quote that part of Bizal:
A criminal defendant's remedies are rarely exhausted in today's state and federal criminal justice system. Convicted defendants often avail themselves of the right to appeal (sic) for post-conviction relief for seemingly endless periods of time. It is not unusual for a defendant whose conviction has been affirmed by the highest court in his own state to continue the action in federal court. There is, therefore, reasonable anticipation of further litigation in each of the cases at issue ... 489 So.2d at 345.
Bizal does not address Connick's contention that some of his records were otherwise privileged. Bizal does not state how the three "cases" or how Powell's criminal *592 conduct were related. If there was no relation in any respect, we choose not to follow Bizal in the light of the Louisiana statutes and scholarly writings and of the apparent unanimity of authoritative analysis elsewhere.
A PCR petition may be filed at any time by a person who has been convicted and who is in custody. See LSA-Const. Art. 1, § 21 and Art. 5, § 2 (1974); CCrP Art. 924; State v. Franklin, 337 So.2d 1152 (La. 1976). We must limit Bizal to its stated and imagined facts. Otherwise, as long as a person is in custody after his conviction is final, the records upon which the DA obtained the conviction, otherwise public, would remain "privileged" against access by any person because of the DA's "reasonable anticipation," a la Bizal, that the person in custody after conviction would institute criminal litigation. This conclusion is directly contrary to the authorities we have discussed above (who can institute criminal prosecution, when it begins, when it ends) and to § 3 A(1) which clearly contemplates that the record pertaining to criminal litigation will become an accessible public record when the criminal litigation is finally adjudicated.
A writ denial, as in Bizal, has no precedential value and does not indicate the supreme court's adoption of an appellate court's reasoning. St. Tammany Manor v. Spartan Building Corp., 509 So.2d 424, 428 (La.1987); South Central Bell Telephone Co. v. Traigle, 367 So.2d 1143, 1150 (La.1978).
Once a conviction and sentence are final under CCrP Art. 922, denial of accessibility of the record pertaining to that criminal litigation is contrary to the constitutional guarantee of access and to § 3 of the PR Act. If access in such a circumstance is to be denied it must be done specifically and unequivocally by the legislature. Title Research, supra. The Act must be liberally construed so as to extend rather than restrict public access. Webb, supra.
The legislature could have provided either for or against access to the DA record pertaining to finally-adjudicated criminal litigation. LSA-Const. Art. 12, § 3. See numerous sections of PR Act that unequivocally and specifically provide against access to particular records that are otherwise public records. Compare § 3 A(2) and (3) with § 3 A(1). See CCrP Art. 434. The legislature, in our opinion, made a choice for access after final adjudication by the clear language of § 3 A(1).

DECREE
We reverse the judgment of the trial court and hold that a PCR action is not "criminal litigation" within the meaning of LRS 44:3 A(1) for the purposes of denying civil enforcement of the Public Records Act, LRS 44:1 et seq., even if the enforcement of the PR Act is sought to serve as a basis for PCR.
We do not decide in this appeal what DA records "pertain to criminal litigation [that is] finally adjudicated" or what is privileged from disclosure under § 3 A(2) and (3). Those decisions apparently must be made on a case to case basis and after the records are viewed by a court in the event the litigants cannot agree. See Cormier, supra; Freeman v. Guaranty Broadcasting, 498 So.2d 218 (La.App. 1st Cir.1986).
We render judgment granting the writ of mandamus and ordering the DA to allow, as the PR Act directs, Harrison access to the public records in DA custody pertaining to the criminal litigation resulting in Harrison's convictions and sentences.
Such costs as the law directs, here and below, are assessed against the DA.
REVERSED AND RENDERED.
HIGHTOWER, J., dissents.
SEXTON, J., dissents with written reasons.
SEXTON, Judge, dissenting.
The majority classifies a PCR application as "hybrid" in the context of whether such proceedings are criminal or civil, distinguishes Bizal v. Connick, 489 So.2d 343 (La.App. 4th Cir.1986), and holds that the applicant has a right to inspect and obtain a copy of the prosecution records of the *593 state which led to the applicant's conviction.
The majority's strongest point is that since a PCR application may be filed at any time, to adopt the instant argument of the state would mean that the district attorney's records are always protected from any scrutiny even though no litigation was pending or actually anticipated.
However, that situation is not presented in the instant case. The applicant has clearly indicated his intent to use the requested file to seek PCR relief. Litigation is therefore "reasonably anticipated." I am not persuaded by the majority's determination that since a PCR application is theoretically a "hybrid" proceeding it is not "criminal" in nature. The clear fact is that this applicant seeks the state's file in order to seek to obtain judicial relief from his criminal conviction. I see that purely and simply as anticipated criminal litigation.
I respectfully dissent.
NOTES
[1] See also: State v. Hannagan, 559 P.2d 1059 (Alaska 1977); Noble v. State, 109 Ariz. 537, 514 P.2d 458 (1973); State v. Bearshield, 104 Idaho 676, 662 P.2d 548 (1983); State v. Jones, 30 Ill.App.3d 706, 332 N.E.2d 411 (1975); Kelly v. Nix, 329 N.W.2d 287 (Iowa 1983); State v. Richardson, 194 Kan. 471, 399 P.2d 799 (1965); State v. Smith, 324 S.W.2d 707 (Mo.1959); Coleman v. State, 633 P.2d 624 (Mont.1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982); State v. Smith, 79 N.M. 450, 444 P.2d 961 (1968); Varnson v. Satran, 368 N.W.2d 533 (N.D.1985); Ouimette v. Moran, 541 A.2d 855 (R.I.1988).