544 So.2d 1 (1989)
QUANTUM SUPPLIES INC. and Jean Smith
v.
BANK OF THE SOUTH.
No. CA 88 0013.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Rehearing Denied June 23, 1989.
*2 Bert Robinson, Baton Rouge, for Quantum Supplies, Inc., et al.
Phillip Preis, and John Fenner, Baton Rouge, for Bank of the South.
John Munsterman, Alexandria, for Security First Nat. Bank.
Before WATKINS, CRAIN and ALFORD, JJ.
ALFORD, Judge.
The third party defendant, Security First National Bank (Security), appeals the trial court's judgment in favor of third party plaintiff, Bank of the South. Said judgment awarded Bank of the South $84,770.70 plus legal interest and costs on the basis that the check presented by Security to the Bank of the South for payment was not endorsed by the named payee and was deposited into account bearing a name different from that of the named payee.

FACTUAL BACKGROUND
The basic facts of the case are not in dispute. Quantum Supplies, Inc., (Quantum), a plaintiff in the original action, was formed in early 1983 by Jean Smith (Smith), a plaintiff in the original action, and Harry V. Farrar, Jr. (Farrar). Smith and Farrar established a line of credit, in favor of Quantum, with Bank of the South supposedly for the purpose of purchasing materials to be used for construction projects and reselling the materials to FCH Companies, Inc. (FCH), another of Farrar's companies, at a markup. Bank of the South was fully aware of Farrar's interests in both companies. Under the agreement between Bank of the South and Quantum, Quantum would present Bank of the South with an invoice evidencing purchases of materials and with an invoice showing the resale of the same materials to FCH. After review and approval of the documents by an officer of Bank of the South, the bank would then issue a cashier's check, payable directly to the vendor, in satisfaction of Quantum's purchases.
In keeping with this arrangement, on July 21, 1983, Quantum presented Bank of the South with an invoice from Construction Materials, P.O. Box 1389, Pineville, Louisiana, apparently evidencing Quantum's purchase of various materials in the amount of $84,770.00. Mr. Tommy LeGleu, senior commercial loan officer of Bank of the South, approved payment of the invoice and Bank of the South issued a cashier's check on behalf of Quantum payable to Construction Materials in the amount of $84,770.70. In turn, Quantum assigned to Bank of the South the receivable due Quantum for the resale of the material, as evidenced by an invoice from Quantum to FCH in the amount of $99,631.88.
Also on July 21, 1983, the check was endorsed

and deposited into an account maintained by FCH Companies, Inc. Construction Materials, P.O. Box 1389, Pineville, Louisiana, another of Farrar's companies, at Security. Security gave provisional credit for the check, stamped the back of the check with the anagram "P.E.G." which stands for prior endorsements guaranteed, and presented the check in due course through the Federal Reserve to Bank of the South, who made final payment of the check with final credit given to the account of FCH Companies, Inc. Construction Materials in the amount of $84,770.70.
At the time Bank of the South issued the cashier's check to Construction Materials it was unaware of Farrar's interest in that company. Subsequently, Farrar's house of cards collapsed in early 1984 and FCH Companies, Inc. Construction Materials closed its account at Security on March 5, *3 1984, at which time there was no money remaining in the account.
In July of 1984, Bank of the South, through its attorney, notified Security it was questioning the endorsement of the July 1983 check it issued to Construction Materials. At no time did Construction Materials raise any question about the endorsement or payment.

PROCEDURAL HISTORY
On July 3, 1984, Quantum and Smith filed suit against Bank of the South to recover $667,743.73 allegedly advanced on the credit line plus lost profits and to obtain cancellation of a continuing guaranty executed by Smith. Bank of the South answered and filed separate third party demands against Security, Commerce & Energy Bank and CertainTeed Corporation seeking indemnification in the event Bank of the South was cast in judgment on the main demand. Bank of the South also filed a third party demand against Continental Insurance Company as their bond carrier. This suit was consolidated with a separate suit filed by Bank of the South against Quantum, Smith and Farrar and with an action filed by Smith and Quantum against CertainTeed and Bank of the South. On March 31, 1987, issues of liability were bifurcated and on April 20, 1987, a stipulated settlement was reached between all parties, except between Bank of the South and Farrar and Bank of the South and Security, and entered into the record. As a result of the stipulation, Bank of the South did not have to make any payments. The judgment which was signed on July 24, 1987, dismissed with prejudice all demands, including those of Quantum and Smith against Bank of the South and of Bank of the South against Quantum, except for the claims of Bank of the South against Farrar and Security.
The third party demand against Security was tried on June 29, 1987, with the trial court finding for Bank of the South on the grounds that Security breached its warranty of good title and its express warranty of all prior endorsements created by the "P.E. G." anagram stamped on the back of the check when it accepted the check with a first endorsement that was not that of the named payee and deposited the check into an account bearing a name different from that of the named payee.
Security then perfected this appeal contending, among other allegations of error, that the endorsement on the back of the cashier's check was proper under the applicable statutes, that Security had good title to the check and that the proceeds reached the intended payee. We agree with Security and reverse the trial court.

PROPER ENDORSEMENT
Since the trial court found that Security breached the warranties provided by LSR.S. 10:4-207 as to title and endorsements by accepting a check that was not endorsed by the named payee, we must first determine the identity of the payee. Based on the documents provided by Quantum to Bank of the South, Bank of the South intended to pay Construction Materials, P.O. Box 1389, Pineville, Louisiana. Farrar, in his deposition entered into evidence, stated that the bank account at Security for Construction Materials was set up as FCH Companies, Inc. Construction Materials. He also referred to the entity as FCH Construction Materials. Farrar identified Construction Materials and FCH Companies, Inc. Construction Materials as the same entity and admitted to being a principal in that company as well as Quantum and FCH Companies. Additionally, Robert Anderson, vice-president of Security, testified that FCH Companies, Inc. Construction Materials, P.O. Box 1389, Pineville, Louisiana, maintained a checking account at Security. Therefore, we find that Construction Materials and FCH Companies, Inc. Construction Materials are the same entity.
Louisiana's commercial laws are set forth in statutes under La.R.S. 10:1-101 et seq., 10:3-101 et seq. and 10:4-101 et seq. which encompass Uniform Commercial Code articles and establish a unified scheme to govern commercial transactions in Louisiana, including the duties of a bank handling commercial paper.
*4 A signature is made by the use of any name, including any trade or assumed name, upon an instrument. La.R.S. 10:3-401(2). Unless the instrument clearly indicates that a signature is made in some other capacity, it is an endorsement. La.R. S. 10:3-402. When an instrument is made payable to a person in a name other than his own, he may endorse in that name or his own or both. La.R.S. 10:3-203. A person paying on the instrument may, but does not have to, require the signature to be in both names. La.R.S. 10:3-203.
Additionally, a depositary bank may supply any endorsement of the customer necessary to title by placing a statement on the item stating the item was deposited by a customer or credited to his account. La. R.S. 10:4-205. It is evident that the theory behind these statutes is to facilitate the movement of commercial paper, especially checks through banks, since it is not at all uncommon for checks to be made out to a name somewhat different from that of the intended payee, especially when that payee is a business, and for depositors, especially those depositing a large number of checks, to inadvertently fail to endorse some of the checks. To require a bank to return or refuse to accept all documents not endorsed at time of presentment exactly as shown on the face would create chaos.
As stated in State v. Tomlinson, 457 So.2d 651, 654 (La.1984),
[T]he name discrepancy does not necessarily mean that the endorsement is improper.
. . . .
Under the statute it is not mandatory that the name of the endorser be the same as that of the payee.
The check in question in the instant case is payable to Construction Materials and is signed on the reverse side "FCH Companies, Inc. Construction Materials." Clearly, the check bears an endorsement within the meaning of La.R.S. 10:3-401 and 402. It is equally clear that the check as endorsed bears the entire name of the payee's business entity as shown on its account with Security, rather than the abbreviated version shown on the face of the check. Such an endorsement is in compliance with La.R.S. 10:3-203. Simply because Bank of the South did not realize that FCH and Farrar had an interest in the intended payee does not invalidate the endorsement itself.
The trial court erred in concluding that the "first endorsement on the back of the check `FCH Companies, Inc.' broke the chain of title since the endorsement was not that of the payee." It is readily apparent that both lines of the endorsement constitute the signature of the payee, since it would be impractical to require that the entire signature of the payee appear on one line, considering the length of some payee names and the width of a check. Additionally, to require that the first part of an endorsement must be exactly as shown on the face of the check would be in direct contravention of La.R.S. 10:3-203 as stated above.
Therefore, we find that the endorsement by FCH Companies, Inc. Construction Materials is proper within the meaning of the applicable statutes.

GOOD TITLE
In accordance with the pertinent parts of La.R.S. 10:3-202(1), negotiation is the transfer of an instrument in such form that the transferee becomes the holder. If the instrument is payable to order, it is negotiated by delivery with any necessary endorsement. Since we have determined that the endorsement on the cashier's check was proper, we find that Security became the holder of the check with good title. This status is not affected by the fact that Farrar may have fraudulently induced Bank of the South to make the payment to the named payee.

PROCEEDS TO PAYEE
Handling a check bearing an endorsement other than the exact name shown on the face of the instrument creates no liability for the depositary bank so long as the proceeds reach the payee designated by the instrument. See Arthur Dooley & of Louisiana Inc. v. Johnson, 422 So.2d 1270 (La.App. 5th Cir.1982), writ *5 denied, 429 So.2d 152 (La.1983); Perini Corporation v. First National Bank of Habersham County, Georgia, 553 F.2d 398 (5th Cir.1977); First National Bank of Gwinnett v. Barrett, 141 Ga.App. 161, 233 S.E.2d 24 (1977).
Although two of the above cited cases arise in jurisdictions outside Louisiana, we feel that the rationale expressed therein would be consistent with our statutory scheme since the Uniform Commercial Code and its underlying policy forms the basis for these decisions. As stated in Perini, 553 F.2d at 413:
Where missing or formally incomplete indorsements are concerned, it is consistent both with the drafters' emphasis on speeding the collection process and with ample customer protection to limit the liability of paying and collecting parties to the situation in which the intended payee did not receive the proceeds of the check.
Upon the record herein, it is evident that the true payee received payment. Farrar testified that the check was deposited into Construction Materials' account at Security, which was maintained in the name FCH Companies, Inc. Construction Materials. The vice-president of Security also testified the check was so deposited. Therefore, Security has no liability since there was no breach of warranty on the endorsement.

PROCEDURE
Procedurally, Security complains that the trial court erred in allowing introduction of evidence beyond Bank of the South's claim against Security for indemnity. Although under La.Code Civ.P. art. 1039 an incidental demand already pleaded prior to dismissal of the principal action survives the dismissal, it necessarily follows that if the third party plaintiff will never be cast in judgment on the principal demand that the third party defendant can never be cast in judgment for indemnity. McFarland v. Sauvinet, 525 So.2d 686 (La. App. 1st Cir.1988). As stated in Phillips v. Ursin, 280 So.2d 243 (La.App. 4th Cir. 1973), where the third party demand sought recovery only in the event that the third party plaintiff was cast in judgment to the plaintiff, and plaintiff made no recovery against third party plaintiff, the third party demand against the third party defendant would be dismissed. In the instant case, Bank of South's third party petition prays "that in the event that thirdparty plaintiff be cast in judgment in any sum in the main demand hereof, that judgment be granted in favor of third-party plaintiff, Bank of the South, back over against third party defendant, Security First National Bank." Since the record reveals that Quantum and Smith made no recovery against Bank of the South, it necessarily follows that Bank of the South's third party petition should be dismissed.

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court in its entirety and find in favor of the third party defendant, Security First National Bank. All court costs are to be borne by Bank of the South.
REVERSED AND RENDERED.