| .PER CURIAM.
With the question of defendant/relator’s guilt turning at trial on whether he was aware that his girlfriend purchased sound equipment for him with a forged check, the Fifth Circuit upheld the trial court’s verdict of attempted forgery on grounds that relator possessed the requisite guilty knowledge to support his conviction as a principal. State v. Fields, 01-0862 (La.App. 5th Cir.12/12/01), 801 So.2d 1278 (“[T]he judge found the circumstances excluded every reasonable hypothesis of innocence, including the defense theory of the case, that defendant did not know that *317 his girlfriend was purchasing the equipment for him with a forged check.... [W]e cannot find error in the determination of the trial judge that the evidence shows that defendant and his girlfriend together planned to, and did, defraud Mobile One for the purpose of obtaining ster: eo equipment without paying for it.”).
The court of appeal reached that conclusion in the following context. Around 12:30 p.m., on July 11, 1998, relator selected amplifiers and a speaker for his Chevy Tahoe from Mobile One Auto Center and informed the salesman, [ ¿Thomas Henderson, that he would return later with his girlfriend, who would pay for the items with a check. Relator returned at 5:00 p.m. and his girlfriend arrived shortly after him. While relator waited at a nearby counter, the girlfriend gave Mr. Henderson a check in the amount of $1109.04 along with her driver’s license. After the salesman received approval for the check, relator and his girlfriend left the store with the equipment. Relator then returned to the store the next day and bought additional equipment which he also had installed in his car; however, relator came back the following week and exchanged the speaker he had previously purchased. Shortly thereafter, the loss prevention manager for Mobile One learned that the check was forged and written against the account of Ann Buck-waiter who was robbed of her checkbook at approximately 1:00 p.m. on July 11, 1998, the same day relator’s girlfriend purchased the audio equipment. However, relator was not arrested until nine months later, in April, 1999, at which time he tendered full payment to Mobile One through counsel.[1] The state subsequently charged the defendant by bill of information with forgery. La.R.S. 14:72. Following a bench trial, the trial court found the defendant guilty of attempted forgery.
When a trier of fact has reasonably rejected the hypothesis of innocence proposed by the defense at trial, the defendant is guilty unless an alternative hypothesis is sufficiently reasonable that rational jurors must have a reasonable doubt as to guilt. State v. Captville, 448 So.2d 676, 680 (La.1984). However, we | ¡¡granted relator’s application for review because a rational trier of fact could not reasonably have inferred guilty knowledge merely because his girlfriend wrote and transferred the check and because relator would benefit from her actions. The due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) does not permit a trier of fact to speculate when the evidence “is such that reasonable jurors must have a reasonable doubt.” State v. Lubrano, 563 So.2d 847, 850 (La.1990)(internal quotation marks and citations omitted). We now reverse.
Forgery is defined in R.S. 14:72 as “the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy. Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery.” Additionally, the state charged that the defendant was a principal to the crime. A principal is anyone “concerned in the commission of a crime, whether present or absent ... whether they directly commit the act con *318 stituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.” R.S. 14:24; State v. Anderson, 97-1301, p. 3 (La.2/6/98), 707 So.2d 1223, 1224 (“Acting in concert each man then became responsible not only for his own acts but for the acts of the other”).
At trial, the state conceded that relator neither forged the check nor transferred the check; instead, the prosecution maintained that relator was guilty as a principal because his girlfriend had gone to the store at his request and thereafter conducted a fraudulent transaction inuring to his benefit. The state further contended that relator’s failure to name his girlfriend and bring her into court constituted evidence of his guilty mind. However, the fact that relator’s girlfriend |4wrote the check, and that relator would benefit from her actions, did not automatically make him a principal to her crime. See State v. Long, 94-0092, p. 6 (La.9/16/94), 643 So.2d 132, 135 (“[A] trier of fact’s determination that a wife aided and abetted the commission of the charged offense by her husband must rest upon more than mere speculation based upon guilt by association arising from relational status ... motive cannot alone provide the basis for determining that one spouse has ‘concerned’ himself or herself in the fraudulent acts of the other spouse simply by reason of their common interests arising from their relational status.”); see also State v. Pierre, 93-0893, p. 4 (La.2/3/94), 631 So.2d 427, 428 (“Only those persons who knowingly participate in the planning or execution of a crime are principals .... [mjere presence at the scene is therefore not enough to ‘concern’ an individual in the crime.”); cf. State v. Harrison, 505 So.2d 783, 792-793 (La.App. 2d Cir.1987)(knowledge that co-defendant was not authorized to use the signature machine to issue the checks would make the defendants principals to the forgery committed by him).
In State v. Tomlinson, 457 So.2d 651, 654 (La.1984), this Court held that the “mere possession of a forged writing does not prove beyond a reasonable doubt that the possessor has knowledge of the forgery and intent to defraud.” Here, the state’s evidence failed even to show that relator had possession of the check; instead, the evidence pointed to relator’s lack of involvement in the obtaining, making, and transfer of the forged check. The evidence revealed that relator was never physically in a position to witness the fraudulent nature of his girlfriend’s transaction because he was leaning against a counter about five to 10 feet behind his girlfriend when she made the purchase. Furthermore, the salesman testified that relator did not check the invoice bearing Ann Burkhalter’s name; instead, the I ^defendant carried the equipment while his girlfriend took the invoice. Even more compelling is the fact that at the time relator informed the salesman that his girlfriend would be purchasing the equipment for him by check, Ms. Burkhalter had not yet been robbed. Thus, it is difficult to credit relator with knowledge of his girlfriend’s plan in light of the fact that the check used to purchase the audio equipment was still in the robbery victim’s possession when the defendant first visited the store.
In addition, that relator, a frequent customer at Mobile One, would participate in a crime at a store which had access to his name, address, and telephone number seems entirely at odds with the state’s theory of collusion. Moreover, relator’s behavior after the forged check was issued undercuts the state’s claim of guilty knowledge on his part. Certainly, relator showed no interest in avoiding detection by returning to the store on two separate occasions following his girlfriend’s purchase of the equipment. Assuming relator *319 was aware of the fraudulent transaction, at least two working days had passed after the forged check was issued thereby leaving relator at risk for arrest by continuing to do business with Mobile One. As such, relator’s actions appear inconsistent with knowledge of the fraud committed by his girlfriend.
Nor was there any evidence confirming that the invoice involving the girlfriend was ever pulled up and brought to relator’s attention during his subsequent transactions. Although the installer from Mobile One indicated that it was standard practice to pull up the previous invoice, the salesman who helped relator on his final visit to the store indicated otherwise. In fact, the salesman testified that given relator’s frequent appearance at the store, there was no need to pull up an invoice because relator’s name would be stored in the computer. _[sFinally, after relator was advised of the forgery, he promptly tendered full payment to Mobile One, an act which, given all of the other circumstances in the present case, also tends to negate an intent to defraud the victim. See State v. Andrus, 250 La. 765, 199 So.2d 897 (1967)(“[T]hat the accused surrendered or restored the property to the owner or made payment for it may under appropriate circumstances negative felonious intent.”).
Relator’s apparent contrition did not extend to naming the woman who signed ánd transferred the forged check but the state presented no evidence at trial that relator learned of the forgery at any time before his arrest, some nine months after the commission of the crime. Following his arrest, the existence of relator’s Fifth Amendment privilege nullified any eviden-tiary weight that might otherwise attach to his silence as a reliable basis for inferring that he had acted in concert with this female to defraud Mobile One. In this respect, the trial court properly discounted relator’s post-arrest silence as substantive evidence of his guilt. Tomlinson, 457 So.2d at 653 (“Of course, the fact that the defendant did not testify [about the circumstances under which he obtained a forged unemployment check] cannot be used against him.”).
The' trial court viewed differently the failure of relator to produce his erstwhile female companion in court as a witness for the defense. However, defense counsel pointed out that some two years after the fact relator was not necessarily in a position to produce the woman in court. Cf. La.R.S. 15:432 (legal presumption that evidence in control of a party but not produced by him or her was not produced because it would not have aided him). Moreover, even assuming that relator could call her as a witness, only the overly sanguine assumption that she would then waive her own Fifth Amendment privilege and provide a judicial |7confession to the Mobile One forgery gave any weight to any inference arising from her absence that she and relator had worked in concert to defraud Mobile One. As defense counsel suggested, relator’s failure to identify the woman to the authorities after he learned of the forgery might implicate him in another crime, see, e.g., R.S. 14:25 (accessory after the fact) but it did not provide reliable evidence of his intent at the time the woman wrote and transferred the check.
Consequently, relator’s actions before and after the check was issued support the defendant’s claim of unawareness rather than the state’s conjecture of conspiracy. Cf. State v. Ford, 473 So.2d 931, 934 (La.App. 3d Cir.1985), writ denied, 477 So.2d 1123 (evidence that defendant lived with check writer, that he personally witnessed check writer sign her father’s name to check, that check was made out to defendant for wages, that defendant had never worked for check writer’s father nor for father’s restaurant from whom check was *320 made out, and that funds from check were used to purchase groceries and liquor for defendant and his roommates was sufficient to prove defendant’s knowledge that check was forged, for purposes of sustaining conviction for attempted forgery); State v. Smith, 461 So.2d 417, 420 (La.App. 4th Cir.1984)(defendant’s intent to defraud and his conviction as principal to attempted forgery was supported by sufficient evidence, when defendant was with another man at check-cashing booth when other man signed check “Jose Gonzales,” defendant identified other man as Jose Gonzales, other man told officer that defendant gave him the check, defendant and other man knew each other, and defendant told other man, “Shut up. You only sinking us deeper” when the other began explaining defendant’s involvement). Thus, the trial court’s apparent compromise verdict of attempted forgery was not supported by the evidence. Cf. State ex rel. Elaire v. Blackburn, 424 So.2d 246, 248 (La.1982).
|sWhile there is abundant suspicion that defendant bears some criminal responsibility, suspicion alone is insufficient to support a conviction. A conviction must rest upon guilt proven beyond a reasonable doubt. The state’s evidence, while casting substantial suspicion on the defendant, fails to meet the constitutionally mandated burden of proof.
Accordingly, the decision of the court of appeal is reversed, relator’s conviction and sentence for attempted forgery are vacated, and he is ordered discharged from the present prosecution.
DECISION OF THE COURT OF APPEAL REVERSED; RELATOR’S CONVICTION AND SENTENCE VACATED: RELATOR DISCHARGED FROM PRESENT PROSECUTION.

. The only evidence of when relator was formally arrested for the Mobile One offense appears on the face of the bail bond filed into the record. The date of arrest is listed as April 6, 1999. Defense counsel explained during closing argument that relator had been arrested on unrelated charges in Orleans Parish after the offense in the present case and his arrest for the Mobile One forgery apparently followed after the charges in Orleans Parish had been resolved.