PARRO, J.
I? An insurance agent and his agency appeal a judgment ordering them to indemnify an insurance company for the amounts paid pursuant to an automobile liability policy, based on the court’s finding that they had fraudulently caused the insurance company to issue the policy. For the following reasons, we reverse the judgment of the trial court.

Factual and Procedural Background

On November 19, 1994, Geraldine Victorian was driving her vehicle on Lee Drive in Baton Rouge when a vehicle driven by Esteban Rodriguez at a high rate of speed and without headlights collided head-on with her vehicle. Ms. Victorian died as a result of injuries to her chest and abdominal area. This accident occurred as Rodriguez was fleeing from a read-end collision he had caused with a vehicle driven by Lance Brown, who had been stopped at a red light on Lee Drive. The vehicle driven by Rodriguez was owned by Rodriquez’s employer, James Kent. An automobile liability policy showing coverage for that vehicle had been issued by American Deposit Insurance Company (American) through insurance agent Phillip A. Dimattia, Jr. and his agency, Dimattia Agency & Associates, to James Kent and his wife, Tamra Kent (the Kents).
Brown and Ms. Victorian’s family filed separate actions for damages against American, Rodriguez, and Kent.[1] Kent moved for summary judgment in both cases, seeking dismissal of all the claims against him; the motions were unopposed and were granted by the trial court. American filed a motion for summary judgment on the issue of coverage, contending the policy issued to the Kents was void due to material misrepresentations in the application concerning business use of the vehicle in question.[2] After further discovery, American filed a second motion for summary judgment, asserting that the contract of insurance was not legally binding, because the application for the insurance policy had been signed by Mr. Dimat-tia’s daughter at his ^instruction and not by Kent’s wife. In the alternative, American asserted that the contract was voidable due to material misrepresentations of fact regarding the business use of the vehicle in question. Both of American’s motions for summary judgment were denied by the trial court.
American also filed a third party demand against Dimattia and his agency (collectively Dimattia) for any amounts it might pay to the plaintiffs, on the basis that Dimattia had acted beyond its authority and contrary to standard practices in binding American for automobile liability coverage to the Kents. The unauthorized acts were described as:
a. Forging the signature of Tamra Kent on the application for insurance upon which the American ... *652 automobile liability insurance policy in question was issued;
b. Providing and filling out the information contained in said application for insurance when neither Tamra Kent nor James F. Kent were present nor had any knowledge that said application for insurance was being filled out, signed or submitted to American ...;
c. Luring American ... to enter into a contract of insurance through fraud and error[.]
American then filed a motion for partial summary judgment in connection with its third-party demand against Dimattia, alleging there was no genuine issue of material fact that an employee for the agency signed the application for the policy issued to the Kents, that this signature was in violation of American’s guidelines and procedures, and that it falsely bound American to a risk it would not have otherwise accepted. Because of the false signature on the application and Dimattia’s failure to comply with their contractual agreement, American sought to be indemnified by Dimattia for amounts it may be condemned to pay to the plaintiffs. Pursuant to this motion, a partial summary judgment was granted by the trial court in favor of American against Dimattia for indemnification, based on a breach of the producer agreement between the parties.[3] The judgment was appealed and affirmed by this court.[4] Victorian v. American Deposit Ins. Co., 99-1571 (La.App. 1st Cir.6/23/00), 764 So.2d 1218. On review, the supreme court found that because no producer agreement between Dimattia and American was in evidence and no such signed agreement had been seen by American’s affiant, there were genuine issues of material fact as to whether Dimattia was contractually obligated to indemnify American for its actions in issuing a policy to the Kents. Therefore, the trial court’s grant of partial summary judgment was reversed, and the matter was remanded to the trial court for further proceedings. Victorian v. American Deposit Ins. Co., 00-2734 (La.12/8/00), 774 So.2d 118, 118-19.
After a bench trial on American’s third-party demand, the following findings were made by the trial court. The Kents went to Dimattia to obtain insurance on their automobiles with liability limits of $100, 000/$300,000. They were informed that Dimattia could not write a policy with those limits since the Kents had no prior history with the company. Dimattia initially secured a policy with the minimum liability limits ($10,000/$20,000) for the Kents, agreeing that at the expiration of that policy’s term, the policy would be increased to one with $100,000/$300,000 limits. When that time arrived, it was necessary to have a new application form completed. Since the Kents were out of town on vacation, Mr. Dimattia completed the policy application with American by transferring the information from an earlier application that had been completed by Mrs. Kent. However, the application was erroneous in several respects, in that the vehicle involved in the accident, a Chevy truck, was listed as not being used as a farm vehicle, and Mr. Kent’s work status was identified as retired and not engaged in any business. Mr. Dimattia’s daughter signed Mrs. Kent’s name on the application form where required. The American *653 application was executed without the express authority of Mr. or Mrs. Kent.
Relying on the representations made in the application, American issued a policy of insurance with $100,000/$300,000 liability limits to the Kents covering the truck being driven by Rodriguez when the accidents occurred. Based on these findings, the trial court concluded that the actions of Mr. Dimattia and his daughter constituted fraud, which caused a loss of $163,912.24 to American. The court was not swayed by 1 sDimattia’s argument that Mrs. Kent would have completed the application by furnishing the same information or that American continued to allow Dimattia to carry on business for it. Based on its finding of fraud, the trial court entered a judgment ordering Dimattia to indemnify American for that amount, plus legal interest and costs. Following the denial of a motion for new trial, Dimattia appealed, contending the trial court erred in finding American proved fraud. Alternatively, Dimattia urged that the trial court abused its discretion in awarding damages, alleging American failed to prove that damages were actually owed.

Fraud

Dimattia asserted that the trial court erred in finding American proved that Dimattia had committed fraud in submitting the application of insurance on behalf of the Kents, as Dimattia did not knowingly provide false information with the intent to deceive American. In response, American urged that it would not have issued the policy had it known that the application for insurance was neither completed nor signed by any insured. It also claims there were material misrepresentations of fact in the policy application, and it would not have issued the policy if it had known about Mr. Kent’s business and the use of the truck in that business.
In the area of criminal law, it takes more than simply the signing of another’s name to be found guilty of the crime of forgery. “Forge” means to alter, make, complete, execute, or authenticate any writing so that it purports to be the act of another who did not authorize that act. LSA-R.S. 14:72(C)(l)(a)(i). It is unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy. LSA-R.S. 14:72(A). In other words, the mere false making, without the intent to defraud someone, does not constitute the crime of forgery. The intent to defraud is an essential element of the offense. See State v. Fields, 02-0388 (La.3/18/03), 842 So.2d 316.
In the area of insurance, LSA-R.S. 22:619(A) provides:
Except as provided in Subsection B of •this Section and R.S. 22:692, and R.S. 22:692.1, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it | ¡^attaching, unless the misrepresentation or warranty is made with the intent to deceive.[5]
Louisiana Revised Statute 22:619(A) addresses the insured’s right to recover under an insurance policy where misrepresentations were made by the insured or on his behalf in the negotiation stage prior to the issuance of the insurance contract. To defeat recovery by the insured, the insurer must prove that the misrepresentation was made with an intent to deceive. See Peterson v. Schimek, 98-1712 (La.3/2/99), 729 *654 So.2d 1024, 1031-32 n. 2. Once again, proof of an intent to deceive is required.
Although LSA-R.S. 22:619(A) addresses misrepresentations by someone on behalf of an insured, it does so in connection with an insurer’s efforts to have the insurance contract declared to be void. Although American raised the issue of the misrepresentations made by Mrs. Kent in defense of its liability in the principal actions, American opted to settle these matters without furthering its efforts to have the court rule on whether the misrepresentations were sufficient to defeat the contract. American eventually abandoned all of its coverage defenses and made payment under the policy to both claimants.[6] In its third-party demand against Dimattia, American sought indemnification for the losses it incurred. — in the form of payments under the policy — due to the fraudulent actions by Dimattia in having American issue the insurance policy on which those payments were based. Thus, this is not a situation where an insurer is seeking to invalidate an insurance contract against the insured by application of LSA-R.S. 22:619(A).
The indemnification ordered by the trial court was not contractual.[7] The award was instead based on American’s claim that because Dimattia lured it into entering the contract of insurance through fraud, Dimattia should be held liable to it for any and all 17amounts American paid as a result of the demands of the plaintiffs in the principal actions. Therefore, we examine the provisions of the Louisiana Civil Code and interpretive jurisprudence to determine the proof necessary to support an award based on fraud.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. LSA-C.C. art. 1906. A contract is formed by the consent of the parties established through offer and acceptance. LSA-C.C. art. 1927. Consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. LSA-C.C. art. 1953. Fraud need not be a criminal act. Intentional fault of a quasi-delic-tual nature suffices to constitute the kind of fraud that vitiates a party’s consent. LSA-C.C. art. 1953, Revision Comments' — ■ 1984, comment (c). Fraud committed by a third person vitiates the consent of a contracting party if the other party knew or should have known of the fraud. LSA-C.C. art. 1956. Under Article 1956, when fraud has been committed by a third person without the knowledge of the party who benefited from it, the other party is still bound. LSA-C.C. art. 1956, Revision Comments' — 1984, comment (b). Nonetheless, relief may be obtained on grounds of error if the requirements of LSA-C.C. arts. 1949 through 1952 are met. Furthermore, in a proper case, the party injured in his interest may recover damages under LSA-C.C. art. 2315 from the third person who committed the fraud. LSA-C.C. art. 1956, Revision Comments — 1984, comment *655 (c). In order to recover from the third person, the party injured must prove that he was a victim of fraud. Fraud is proved by a preponderance of the evidence and may be established by circumstantial evidence. LSA-C.C. art. 1957.
Intent to defraud and loss or damage are two essential elements to constitute legal fraud. McDonough Marine Serv., a Div. of Marmac Corp. v. Doucet, 95-2087 (La.App. 1st Cir.6/28/96), 694 So.2d 305, 309. The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard of review. Boudreaux v. Jeff, 03—1932 (La.App. 1st Cir.9/17/04), 884 So.2d 665, 672; Harmon v. Schamberger, 536 So.2d 579, 581 (La.App. 1st Cir.1988). Not all fraud actions are contract claims. The well-recognized rule is that when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and may elect to recover his damages in either of the two actions. Bunge Corp. v. GATX Corp., 557 So.2d 1376, 1385 (La.1990). A party who is injured by fraud and deceit of another has a cause of action for damages. Boudreaux, 884 So.2d at 672.
According to Mr. Dimattia’s testimony at trial, Mrs. Kent completed an initial application for a policy with lower limits about one month before the American application. Based on that initial application, Dimattia wrote a one-month lower-limit policy through a different insurer to establish the Kents’ eligibility for the higher liability limits. At the end of that month, when the lower-limit policy was about to expire, Mrs. Kent completed a second application and paid a premium deposit for a $100,000/$300,000 policy with another insurer. Mr. Dimattia then learned he could obtain the higher-limit coverage for the Kents through American at a lower premium cost than that required by the other insurer. Mr. Dimattia called Mrs. Kent and asked her to come in to complete an American application, at which time she told him they wanted the American policy, but she was leaving on vacation and could not come into the office. To avoid a lapse in coverage, Mr. Dimattia used the information from the application with the other insurer to complete American’s application form. He also added the fact that while the one-month lower-limit policy was in effect, Mrs. Kent had been involved in an “at fault accident,” He then had his daughter sign Mrs. Kent’s signature in several places on the American application form.
Mrs. Kent stated all the information on the American application was exactly what she had put on the other applications, that she considered that information to be correct and accurate, and that if she had completed the American application, she would have provided the same information that Mr. Dimattia did in completing it. Mrs. Kent testified that she considered her husband as retired. Although he had some | ¡¡fighting roosters, she never considered that a business or farming occupation. She also did not consider the occasional use of the pickup truck for hauling roosters to be a “business use” or “farming use” of the truck. The truck did not have a farm license, and the Kents never wrote it off as a business or farming expense on taxes.[8] Mrs. Kent also said she considered that Mr. Dimattia had authority from her *656 to do what was necessary to get the coverage with a good company at a better premium using the information she had already provided to him. She confirmed that American renewed the policy for three additional six-month periods, the last of which was after the accident on which these lawsuits were based.
Based on our review of this evidence, we conclude that American has not shown that by completing the application with this information, Mr. Dimattia or his agency intended to deceive American in any way or cause it any loss. Mr. Dimattia made no intentional misrepresentations in connection with the questions related to Mr. Kent’s occupation or the business use of the vehicle in question. The responses to these questions were supplied by Mrs. Kent on the earlier applications and simply transferred by Mr. Dimattia to the application needed to obtain the requested coverage through American. Mrs. Kent said she would have completed the application in the same manner as was done by Mr. Dimattia, based on her belief that her husband was in fact retired and used the vehicle in question as his personal vehicle. Dimattia was attempting to timely fulfill its obligation to obtain increased coverage for the Kents. Moreover, by obtaining coverage for the Kents at a reduced premium, Dimattia acted to its own detriment by reducing its potential commission. Because the Kents were unavailable when the application needed to be completed, Mr. Dimattia felt it necessary to complete the application and have Mrs. Kent’s name signed to it. Although Mr. Dimattia and his agency acted inappropriately in so doing, we find no evidence to support that either did so with the intent to defraud American by obtaining an unjust | inadvantage for themselves or the Kents or by causing a loss to American. Absent such evidence, we conclude that the trial court manifestly erred in ordering Dimat-tia to indemnify American on the basis of fraud.

Decree

For the foregoing reasons, the judgment of the trial court is reversed. Costs of this appeal are assessed to American Deposit Insurance Company.
REVERSED.
WELCH, J., concurs in result.

. In his suit, Brown also named his automobile liability insurer as a defendant. The lawsuits were later consolidated at American’s request.

. The applicant responded negatively to a question concerning whether the vehicle was used for business purposes. American was not authorized to issue business automobile liability insurance in Louisiana.

. This judgment was designated as a partial final judgment.

. While the appeal on the judgment concerning the third-party demand was pending, the plaintiffs settled their claims against American on the principal demands in both suits.

. The exceptions mentioned in this provision apply to other types of policies and are not relevant to this case.

. We also note that American did not reassert a business use exclusion to coverage, nor did it deny coverage based on the fact that Rodriguez was driving the truck against Mr. Kent's specific instructions, either of which might have negated coverage.

. Because the alleged provider contract between Dimattia and American was never located, and no one could remember signing such a contract or seeing such a contract signed by these parties, the trial court did not allow any parol evidence at trial concerning the indemnification provisions such a contract might have contained.

. In its brief to this court, American quoted extensively from portions of Mrs. Kent’s deposition that it alleges are contradictory to her trial testimony. However, that deposition was not introduced, nor was it ever used to impeach her trial testimony. Therefore, all such arguments are improper, as they are based on information outside the record on appeal.